**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

WALESKA MALAVÉ ORTIZ,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 18-1480 (MEL)

**OPINION AND ORDER**

**I.    Procedural and Factual Background**

Pending before the court is Ms. Waleska Malavé Ortiz's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 13. On January 28, 2013, Plaintiff filed an application for Social Security benefits alleging that on June 1, 2011 ("the onset date"), she became unable to work due to disability. Tr. 19.[1] Prior to the onset date, Plaintiff worked as a cigar machine operator and sales clerk. Tr. 32, 94. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. Tr. 21. Plaintiff's disability claim was denied on June 21, 2013, and upon reconsideration. Tr. 19.

Thereafter, Plaintiff requested a hearing which was held on May 3, 2016 before Administrative Law Judge Theodore W. Grippo ("the ALJ"). Tr. 34, 82-96. On July 8, 2016, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 34. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial

---

[1] "Tr." refers to the transcript of the record of proceedings.

review. Tr. 1-6. Plaintiff filed a complaint on July 12, 2018. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 13, 14.

## II.     Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether

plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. Tr. 21. Then, at step one of the sequential

evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Id. At step two, the ALJ determined that Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease, affective disorder, and anxiety disorder. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 22. Next, the ALJ determined that during the relevant period

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she can occasionally climb, balance, stoop, kneel, crouch, and crawl. [She] can frequently engage in bilateral handling and feeling. The claimant can occasionally reach about level of shoulder bilaterally. She is limited to simple work with no contact with the public.

Tr. 25. At step four, the ALJ determined that through the date last insured, Plaintiff could not perform her past relevant work as a cigar machine operator and sales clerk. Tr. 32. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert. Tr. 32-33, 94-96. The vocational expert testified that an individual with a similar RFC would be able to perform the following representative occupations: inspector and hand packager, garment sorter, and mail clerk. Tr. 33, 94-95. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 34.

### III. Legal Analysis

Plaintiff's sole argument regarding the ALJ's decision in this case is that the RFC was deficient because it did not include a nonexertional limitation that she was restricted to rotating her neck occasionally.[2] ECF No. 13, at 5-10. Plaintiff's argument rests on the opinion of medical

---

[2] "Exertional limitations relate to the claimant's ability to meet the seven strength demands of a job—sitting, standing, walking, lifting, carrying, pushing, and pulling. Nonexertional limitations or restrictions affect an

5

expert internist Dr. José Rolón Rivera ("Dr. Rolón") who testified at the administrative hearing. Tr. 82, 87-93. Dr. Rolón reviewed the record evidence and testified that Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently. Tr. 26, 87, 89. Dr. Rolón also testified that Plaintiff could stand and walk for six hours, sit for six hours, perform postural movements occasionally, and perform handling and fingering with both hands frequently. Tr. 89. Upon further questioning from Plaintiff's counsel, Dr. Rolón testified that Plaintiff could occasionally turn and rotate her neck in order to look at a table and do table work. Tr. 93. Therefore, based on Dr. Rolón's testimony, Plaintiff argues that the RFC is deficient because it should have included the limitation that she could only rotate her neck occasionally. ECF No. 13, at 5-10.

The ALJ determined that Dr. Rolón's opinion was entitled to great weight and specifically considered Dr. Rolón's testimony regarding neck movement in his decision by noting that "[Dr. Rolón] said that in his experience a person with the claimant's conditions could be limited to occasionally rotating the head." Tr. 26-27. Plaintiff contends that because the ALJ assigned great weight to the opinion of Dr. Rolón, the ALJ erred by not including the neck movement limitation in the RFC. ECF No. 13, at 8. Although the ALJ gave great weight to Dr. Rolón's overall opinion, he was not required to adopt the entirety of his testimony. See Reeves v. Comm'r of Soc. Sec., 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."); Majors v. Colvin, Civ. No. 13-1098, 2014 WL 1238477, at *7 (N.D.

---

individual's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all physical limitations that are [not] included in the seven strength demands." Hodges v. Berryhill, Civ. No. 16-22, 2017 WL 9439160, at *9 (N.D. Fla. Feb. 8, 2017) (citing SSR 96–4p, 1996 WL 374187, at *2 (1996)); 20 C.F.R. §§ 404.1569a(b)-(c). The term "constantly" is defined as occurring two-thirds or more of the time, "frequently" is defined as anywhere between one-third to two-thirds of the time, and "occasionally" is defined as very little up to one-third of the time. See Social Security Ruling 83–10, 1983 WL 31251, at *6.

Ohio Mar. 25, 2014) ("an ALJ is not required to adopt every opinion expressed by a nonexamining medical expert, even when an ALJ overall accords that opinion great weight."); Bennett v. Colvin, Civ. No. 13-1176, 2015 WL 153950, at *13 (M.D. Tenn. Jan. 12, 2015) ("In fact, an ALJ who accords 'great weight' to an opinion is not required to adopt that opinion wholesale.").

"In assessing an RFC, the ALJ can 'piece together the relevant medical facts from the findings and opinions of multiple physicians.'" Dorow v. Berryhill, 303 F. Supp. 3d 167, 169 (D. Mass. 2018) (quoting Evangelista v. Secretary of Health and Human Services, 826 F.2d 136, 144 (1st Cir. 1987)). "In doing so, the ALJ is not required to adopt the entirety of any one physician's opinion on functional capacity. Nor is he required to incorporate verbatim those functional limitations he chooses to adopt." Dimambro v. U.S. Soc. Sec. Admin., Civ. No. 16-486, 2018 WL 301090, at *8 (D.N.H. Jan. 5, 2018) (citations omitted); Moscorelli v. Colvin, Civ. No. 15-1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016) ("Further, as with any medical source opinion, an ALJ need only accept those limitations he finds credible, and his RFC finding does not need to correspond to a particular physician's opinion.").

A review of the record leads to the conclusion that the ALJ appropriately considered the medical evidence and opinions of record in determining Plaintiff's RFC. The ALJ noted that in June 2011, examining neuroradiologist Dr. Fernando J. López ("Dr. López") found that radiologic studies of Plaintiff's shoulders, lumbosacral and cervical spine evidenced normal findings. Tr. 27, 404-05. In October 2011, Dr. López opined that a cervical spine MRI revealed findings consistent with straightening of the cervical lordosis correlated to muscle spasm, but no signs of disc herniation, spinal central canal stenosis, or neural foraminal narrowing. Tr. 400. It was also opined by Dr. López that Plaintiff's vertebral body heights and intervertebral disc

spaces were preserved. Id. Dr. López found that a lumbar spine MRI in October 2011 showed mild levoscoliosis but no signs of disc herniation, spinal canal stenosis, or neural foraminal narrowing. Tr. 401.

In March 2012, treating internist Dr. Arturo Pérez Correa ("Dr. Pérez") diagnosed Plaintiff with cervical strain and lumbo sacral strain and noted that she tolerated acupuncture treatment well and recommended conservative treatment and medication. Tr. 402. In October 2012, treating neurologist Dr. Francisco Vázquez Reillo ("Dr. Vázquez") diagnosed Plaintiff with thoracic outlet syndrome. Tr. 412. In November 2012, examining radiologist Dr. Lilliam Díaz Solá ("Dr. Díaz") opined that an MRI of the cervical spine revealed a C4-C5 small posterior disc bulge compressing the dural sac with no spinal canal stenosis, C5-C6 posterior paracentral disc herniation compressing the dural sac with no spinal canal stenosis, and C6-C7 posterior central disc herniation compressing the dural sac with no spinal canal stenosis, and straightening of the cervical lordosis potentially due to muscle spasms. Tr. 410.

The ALJ noted that Dr. Vázquez completed a neurological medical report in March 2013 where he documented that Plaintiff complained of severe stiffness and a limited motion of the neck radiating to the chest and shoulders, as well as weakness and sensory loss. Tr. 27, 413. Dr. Vázquez opined that Plaintiff presented weakness and difficulty in movement and found that she was unable to engage in stationary standing, walking long distances, sitting for prolonged periods, and lifting objects of more than 10 pounds. Tr. 28, 415-16.

The ALJ assigned little weight to the opinion of Dr. Vázquez. Tr. 28. "[A]n ALJ should generally give more weight to a treating physician's opinions, because such doctors 'are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [claimant's] medical impairment(s).'" Carstens v. Comm'r of Soc. Sec., Civ. No. 12-1335, 2013 WL

3245224, at *7 (D.P.R. June 26, 2013) (quoting 20 C.F.R. § 404.1527(d)(2)). The ALJ, however, can give less weight to a treating physician's opinion with a showing of good cause: "(1) that they are brief and conclusory, (2) not supported by medically acceptable clinical laboratory diagnostic techniques, or (3) are otherwise unsupported by the record." Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007). In the case at hand, the ALJ determined that Dr. Vázquez's opinion was not consistent with the testimony of Dr. Rolón. Tr. 28. Dr. Rolón opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently and that she could stand, sit, and walk for 6 hours. Tr. 89. Dr. Rolón also noted that the record reflected that Plaintiff was not diagnosed with stenosis. Tr. 88, 92. Plaintiff has not cited to any evidence in the record showing that she was diagnosed with stenosis.

The ALJ's determination to assign little weight to Dr. Vázquez's opinion is further justified because it is inconsistent with the treatment notes of treating rheumatologist Dr. Roberto Álvarez ("Dr. Álvarez"). The treatment notes of Dr. Álvarez continuously reflected that Plaintiff's musculoskeletal system was normal, she maintained normal reflexes and symmetrical strength, and vascular and neurologic examinations were normal.[3] Tr. 29, 571-588. Dr. Álvarez's treatment notes indicate that Plaintiff's neck was normal, supple, with full range of motion and he found that no adenopathy or masses were present in the neck.[4] Tr. 573, 577, 581, 584, 587. See Lozada-Miranda v. Comm'r of Soc. Sec., Civ. No. 18-1410, 2020 WL 4671838, at *6 (D.P.R. Aug. 11, 2020) ("the opinion of a treating physician need not be given controlling weight where the ALJ determines that it is inconsistent with the other substantial evidence in [the] case record." (citing 20 C.F.R. § 404.1527(c)(2)); Falcon-Cartagena v. Comm'r of Soc. Sec., 21 F.

---

[3] These treatment notes refer to Dr. Álvarez's treatment of Plaintiff in September 2014, February 2015, October 2015, June 2015, and March 2016.
[4] These treatment notes refer to Dr. Álvarez's treatment of Plaintiff in September 2014, February 2015, October 2015, June 2015, and March 2016.

9

App'x 11, 12-13 (1st Cir. 2001))). In March 2014, Dr. Díaz evaluated an MRI of the lumbosacral spine and opined that the findings were unremarkable and that there was no distinct posterior disc herniation, spinal canal or neural foraminal stenosis identified. Tr. 484. Dr. Díaz also opined that the intervertebral spaces and facet joints were well preserved. Id.

In April 2016, Dr. Álvarez completed a "medical report regarding physical limitations for adult social security claim" and diagnosed Plaintiff with carpal tunnel syndrome, fibromyalgia, and osteoarthritis. Tr. 607. Dr. Álvarez assessed Plaintiff's prognosis as poor and opined that she could lift less than 5 pounds, could not walk at a normal pace, and that she was not able to bend, stoop, squat, kneel, or reach overhead. Tr. 607-08. The ALJ reasonably assigned little weight to Dr. Álvarez's medical report because it was inconsistent with the findings in his own treatment notes. Ramos-Rodríguez v. Comm'r of Soc. Sec., 91 F. Supp. 3d 232, 240 (D.P.R. 2015) ("The opinion of such a treating physician can be rejected . . . when it is not supported by the physician's own medical findings."). As stated earlier, Dr. Álvarez's treatment notes prior to the April 2016 report show that Plaintiff's musculoskeletal system was normal, she maintained normal reflexes and symmetrical strength, and vascular and neurologic examinations were normal.[5] Tr. 29, 571-588. Furthermore, Dr. Álvarez's treatment notes reveal that Plaintiff's neck was normal, supple, with full range of motion.[6] Tr. 573, 577, 581, 584, 587. Dr. Álvarez also detailed in his treatment notes that no adenopathy was present in the neck and no masses in the neck were detected. Id.

In April 2013, state agency consultant physiatrist Dr. Benjamín Cortijo ("Dr. Cortijo") reviewed the record and opined that Plaintiff could lift and/or carry 20 pounds occasionally and

---

[5] These treatment notes refer to Dr. Álvarez's treatment of Plaintiff in September 2014, February 2015, October 2015, June 2015, and March 2016.
[6] These treatment notes refer to Dr. Álvarez's treatment of Plaintiff in September 2014, February 2015, October 2015, June 2015, and March 2016.

10

10 pounds frequently. Tr. 239. Dr. Cortijo also opined that Plaintiff could stand and/or walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. Tr. 239. It was also opined by Dr. Cortijo that Plaintiff could occasionally climb ramps and stairs, climb ladders, balance, stoop, kneel, crouch, and crawl. Tr. 240. Dr. Cortijo also opined that Plaintiff could handle and finger frequently. Tr. 240. Notably, Dr. Cortijo did not assess any limitations with regard to Plaintiff's neck. Tr. 239-41. See Poole v. Saul, 462 F. Supp. 3d 137, 160 (D. Conn. 2020) ("it is well settled that the ALJ is entitled to rely not only on what the record says, but also on what it does not say"). In January 2014, state agency consultant general practitioner Dr. Cindy Ramírez Pagán ("Dr. Ramírez") reviewed the record on reconsideration and concurred with Dr. Cortijo's opinion. Tr. 257-259. The ALJ reasonably assigned great weight to the opinions of Dr. Cortijo and Dr. Ramírez as they were consistent with the medical evidence in the record evidencing disc herniation at multiple levels but without canal stenosis or neural cord compression. Tr. 29, 410.

The Commissioner also argues that Plaintiff's allegation that the ALJ should have included a limitation restricting her to occasionally rotating her neck is unsupported by her testimony. ECF No. 14, at 8-9. Plaintiff did not testify to range of motion restrictions at the administrative hearing. Tr. 84-87. Instead, Plaintiff testified that she was unable to work because of difficulties with concentration, anxiety, lifting, standing, sitting, and dizziness. Tr. 85. Plaintiff also testified that she can do simple household chores like washing, making the bed, and preparing light meals. Tr. 87. Furthermore, in her March 2013 function report, Plaintiff stated that she could not work due to concentration problems, irritability, bending, and prolonged sitting and standing. Tr. 106, 358. Once again, Plaintiff did not report that her ability to work was affected by motion limitations with her neck. Id.

11

The ALJ did not err by not incorporating a non-exertional limitation in her RFC that restricted her to occasionally rotating her neck. In his decision, the ALJ specifically noted that there was no evidence in the record of nerve cord compression or stenosis and that the record did not reveal the need for emergent medical care, nerve blocs, or physical therapy. Tr. 27. Plaintiff has not cited to any evidence discrediting the ALJ's finding that the record did not contain evidence of nerve cord compression and stenosis or that she required emergent medical care, nerve blocs, or physical therapy. Accordingly, the ALJ's determination not to include the restriction in the RFC that Plaintiff was limited to occasionally rotating her neck is supported by substantial evidence. See Rosario Mercado v. Saul, Civ. No. 19-11172, 2020 WL 2735980, at *15 (D. Mass. May 26, 2020) ("An ALJ's decision may implicitly reject conflicting evidence or interpretations without explicitly addressing them."); Mercado-Mari v. Comm'r of Soc. Sec., Civ. No. 14-1292, 2015 WL 3629964, at *13 (D.P.R. June 10, 2015) ("Importantly, 'the resolution of conflicts in the evidence is the purview of the ALJ, and not for the doctors or for the courts,' and [the court] must uphold the ALJ's findings if 'a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [his] conclusion.'" (quoting Rodríguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

Furthermore, the Commissioner argues that Plaintiff has not shown how a limitation to occasionally rotating her neck would impact the availability of jobs at step five of the sequential evaluation. ECF No. 14, at 9. At step five, the vocational expert ("VE") testified that a hypothetical individual with Plaintiff's RFC could perform the jobs of inspector and hand packager, garment sorter, and mail clerk. Tr. 94-95. While Plaintiff's counsel had the opportunity to question the VE at the administrative hearing about Plaintiff's alleged limitation of being restricted to rotating her neck occasionally and what impact it would have on the identified jobs,

he did not do so. Tr. 95. See Adams v. Saul, Civ. No. 19-503, 2020 WL 4550897, at *6 (E.D. Ky. Apr. 6, 2020) ("When a plaintiff's attorney fails to object to certain VE testimony or cross-examine the VE on an issue raised in the hearing, the plaintiff waives the right to argue that point in district court."). Although there is no VE testimony on the potential impact of being restricted to only rotating her neck occasionally, Plaintiff has not set forth any evidence or argued that the jobs identified by the VE would be unavailable to an individual who was limited to rotating her neck only occasionally.

Plaintiff, who bears the burden of proof with regard to her RFC, has not convincingly shown that she was more limited than what the ALJ reasonably found. See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). Thus, there is no reason to overturn the ALJ's determination that Plaintiff did not have a nonexertional limitation restricting her to rotating her neck occasionally. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) ("We must affirm the Secretary's [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

**IV.    Conclusion**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 22nd day of February, 2021.

s/Marcos E. López<br>U.S. Magistrate Judge